UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**TACTICAL REHABILITATION, INC.**

  Plaintiff,

v.

  No. 2:24-cv-173

**ALAINA YOUSSEF,**
**et al.,**

  Defendants.

## OPINION AND ORDER

Pending before the court are two motions to dismiss, (ECF Nos. 28, 30), and a motion for a preliminary injunction, (ECF No. 16). The motions arise out of Plaintiff Tactical Rehabilitation, Inc.'s ("Tactical") former employment of Defendant Alaina Youssef ("Youssef") as Business Development Manager to market Tactical's medical equipment to healthcare providers. Compl. (ECF No. 1, ¶¶ 12-14). While Tactical employed Youssef and after she was terminated, she allegedly performed sales and marketing activity for competitors, namely defendants Holly Olson ("Olson"), Sabot Medical, LLC ("Sabot"), and Advent Medical, LLC ("Advent") (collectively, "Olson Defendants"). Id. ¶¶ 1-4. Tactical filed suit on March 15, 2024, and filed a motion for a preliminary injunction on March 21, 2024, (ECF No. 16). Tactical alleges that Youssef breached her non-compete and confidentiality agreements, and asserts a variety of contract, tort, and statutory claims against her and her new employer. Id. ¶¶ 43-89.

After considering the briefs and oral argument, on the facts pled and under existing Virginia law, this court GRANTS in part and DENIES in part Defendants' Motions to Dismiss and DENIES Plaintiff's Motion for a Preliminary Injunction.

## I.      **BACKGROUND**

Tactical primarily sells durable medical equipment to healthcare providers serving active-duty and retired military servicemembers. Compl. (ECF No. 1, ¶ 12). In May 2019, Tactical hired Youssef as a sales representative, later changing her title to Business Development Manager. Id. ¶ 13. Youssef's duties at Tactical included developing new business and servicing existing clients, which provided her with access to Tactical's marketing methods and customer base. Id. ¶ 14.

Youssef signed a non-compete agreement with Tactical on May 18, 2019. Ex. A (ECF No. 1-1); see also Ex. A (ECF No. 36-1, at 4-5).[1] She also signed two confidentiality agreements with Tactical. Ex. B (ECF No. 1-2); Ex. C (ECF No. 1-3). The non-compete agreement broadly prohibited Youssef from competing with Tactical. Because its precise wording is important to the issues that follow, I will reproduce it here:

> Beginning on April 17, 2019, and through the Time Period mentioned in Section 3 herein, [Youssef] shall not: Provide the same or similar industry products, services, or engage in any other way a representation of any other business of a similar nature to the business of [Tactical] without written consent.
>
> ***
>
> Directly or indirectly engage in any similar business practice of [Tactical] while being in contact with [Tactical's] current or former clients.
>
> ***
>
> Nor shall [Youssef] solicit any client of [Tactical] for the benefit of a third party that is engaged in a similar business to that of [Tactical].
>
> ***
>
> Engage in business activity, whether paid or non-paid, with a competitor of [Tactical] that provides a similar product or service.

---

[1] The copy of the non-compete agreement Tactical provided in its complaint as Exhibit A is signed by Youssef, but not Tactical. See Ex. A (ECF No. 1-1, at 7). Tactical provided a different version of the non-compete agreement in its opposition to Youssef's Motion to Dismiss, Ex. A (ECF No. 36-1, at 4-5), which includes a separate page signed by Tactical and a separate page signed by Youssef.

Ex. A (ECF No 1-1, at 2).  The agreement also prohibited Youssef from disclosing confidential information, including "[A]ny and all technical and non-technical information provided by [Tactical], including . . . customer lists . . . [and] the names of vendors or suppliers . . . ." Id. at 3-4.  The confidentiality agreements require that Youssef hold Tactical's business information "in strict confidence." Ex. C (ECF No. 1-3); see also Ex. B (ECF No. 1-2, at 2).

Tactical alleges that Youssef violated these agreements in a number of ways, including by emailing patient records from her work email to her personal email account and emailing Tactical's "proprietary and unique language" used in documents sent to healthcare providers to her personal email account. Compl. (ECF No. 1, ¶¶ 27-30).  Tactical also claims that Youssef diverted business from Tactical to its competitors, co-defendants Sabot and Advent, and that she was simultaneously employed at Sabot while working for Tactical. Id. ¶¶ 31-33.

On September 7, 2023,[2] Tactical terminated Youssef's employment after she requested that she be reclassified as an independent contractor and be permitted to work with competitors. Id. ¶ 37.  Tactical alleges that when it refused her request, Youssef "expressly threatened to steal Tactical's customers by selling to them directly . . . ", leading to her termination. Id.  Following her termination, Youssef publicly declared that she was a self-employed, independent distributor of medical devices on LinkedIn. Id. ¶ 39.  In this role, she approached Tactical customers and "convince[d] them to take their business to her instead of Tactical." Id. ¶ 40.  She also approached one of Tactical's suppliers, although they declined Youssef's offer. Id. ¶ 41.  Since Youssef has left Tactical, its sales have "diminished by half" and several customers who regularly ordered from Tactical "have ceased doing so or have notified Tactical that they obtained products from a competitor, instead." Id. ¶ 40.

---

[2] Youssef's non-compete agreement therefore remains in effect until September 7, 2025. Id. ¶ 38.

On March 15, 2024, Tactical filed a six-count complaint against Youssef, Olson, Sabot, and Advent. Compl. (ECF No. 1). Counts I and II of the Complaint request injunctive enforcement of the restrictive covenants in the agreements and allege breach of contract against Youssef. Id. ¶¶ 43-60. Tactical cites the choice of law provision in the non-compete agreement to argue that Florida law governs the enforceability of the agreements. Id. ¶ 44. Count III requests equitable indemnification against all defendants for legal fees incurred in preemptively addressing Tactical's alleged "exposure to legal liability arising from Youssef's disclosure of statutorily protected patient health information." Id. ¶¶ 61-65. Count IV alleges tortious interference with a business expectancy against all defendants for interfering with Tactical's existing business relationships with its clients. Id. ¶ 66-72. Counts V and VI of the Complaint allege that all defendants violated the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Virginia Uniform Trade Secrets Act, Va. Code Ann. 59.1-336. Compl. (ECF No. 1, ¶¶ 73-89).

Defendants moved to dismiss all six counts of the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See (ECF Nos. 28, 30). Defendants argue that Tactical's allegations lack the factual support necessary and are insufficient to state plausible claims. Mem. Supp. Mot. Holly Olson, Sabot Medical LLC, and Advent Medical LLC Dismiss Compl. Pursuant Rule 12(b)(6) ("Olson Defs.' Mem.") (ECF No. 29, at 28-29); Br. Supp. Alaina Youssef's Mot. Dismiss ("Youssef's Mem.") (ECF No. 31). On July 8, 2024, Tactical opposed both of Defendants' motions. See Pl.'s Mem. Law Opp'n Alaina Youssef's Mot. Dismiss ("Pl.'s First Opp'n") (ECF No. 36); Pl.'s Mem. Law Opp'n Olson Defs.' Mot. Dismiss ("Pl.'s Second Opp'n") (ECF No. 37). Tactical argues that it sufficiently pled "a straightforward breach of a non-competition agreement, disclosure of confidential and trade secret information, and unfair business competition," and that Tactical provided evidence that demonstrated that Youssef signed

4

multiple agreements and sent multiple emails divulging confidential information to the Defendants. See Pl.'s Second Opp'n (ECF No. 37, at 1).  On July 19, 2024, both Defendants replied. (ECF Nos. 38, 39).

Prior to briefing on the pending motions, Tactical moved for a Temporary Restraining Order, which United States District Judge Jamar K. Walker denied on March 19, 2024.[3]  (ECF No. 15).  Tactical then moved for a Preliminary Injunction, seeking to prohibit Defendants from "soliciting business from Tactical's existing and prospective customers and from using its confidential business information." (ECF No. 16, at 4).  Defendants opposed the motion, and Tactical replied. (ECF Nos. 32, 33, 36, 37).

On October 8, 2024, this court conducted a combined hearing on the motions to dismiss and motion for a preliminary injunction. (ECF No. 48).  Below, the court considers the parties' arguments on each of Tactical's claims and its motion for a preliminary injunction.

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  To avoid dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Though a complaint need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550

---

[3] Following other preliminary and scheduling orders, the parties consented to magistrate judge jurisdiction and the matter was referred to me for all future pretrial proceedings, trial, and entry of judgment.  Referral Order (ECF No. 47).

U.S. at 555. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not state a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion, the court must "accept the well-pleaded allegations of the complaint as true," Albright v. Oliver, 510 U.S. 266, 268 (1994), and "construe factual allegations in the light most favorable to the plaintiff," Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999). However, the court does not assume the truth of any legal conclusions or unsupported, conclusory statements. Iqbal, 556 U.S. at 678-79.

The court may also consider certain materials outside of the complaint without converting the motion to dismiss into one for summary judgment. This includes documents attached to the complaint, Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004), as well as documents attached to the motion to dismiss if such materials are "integral to and explicitly relied on in the complaint" and their authenticity is not in dispute, Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015). Additionally, the court may consider matters of public record "such as documents from prior state court proceedings." Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009).

After reviewing the allegations, the court must then consider whether they are sufficient to state a plausible claim for relief. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A Rule 12(b)(6) motion, then, should be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards, 178 F.3d at 244.

6

### III.   ANALYSIS

As noted above, Plaintiff raises six claims: (1) injunctive enforcement of a restrictive covenant agreement against Youssef, (2) breach of contract against Youssef, (3) equitable indemnification against all defendants, (4) tortious interference with business expectancy against all defendants, (5) injunctive enforcement of the Defend Trade Secrets Act and damages against all defendants, and (6) injunctive enforcement of the Virginia Uniform Trade Secrets Act and damages against all defendants. Compl. (ECF No. 1, ¶¶ 43-89). For the reasons explained below, I will grant Defendants' Motions to Dismiss with respect to Count III. But, accepting the facts pled as true, and viewed in the light most favorable to Plaintiff, Tactical has plausibly alleged the remaining claims. Applying the standard for preliminary injunctive relief, however, I find Tactical is unlikely to succeed on the merits of its broad non-compete claim, and the non-solicitation claim can be remedied by money damages and is therefore not a necessary subject of preliminary injunctive relief. Accordingly, I will deny Tactical's request for a preliminary injunction.

### A.    Virginia Law Applies to All Counts.

A federal court sitting in diversity[4] applies the forum state's choice-of-law rules to determine the substantive state law that governs the plaintiff's claims. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "Virginia adheres to the use of traditional rules applicable to conflicts of laws," Frye v. Commonwealth, 345 S.E.2d 267, 272 (Va. 1986),

---

[4] The court has both federal question jurisdiction and diversity jurisdiction over this action pursuant to both 28 U.S.C. § 1331 and § 1332(a)(1). See Compl. (ECF No. 1, ¶ 10) (explaining that federal question jurisdiction exists because the complaint alleges a violation of federal law, and that diversity jurisdiction exists because complete diversity exists between the parties and the matter in controversy exceeds $75,000). When both federal question and diversity jurisdiction exist in an action, "courts have analyzed the choice-of-law question according to the rules appropriate to diversity jurisdiction cases." Artistic Stone Crafters v. Safeco Ins. Co., 726 F. Supp. 2d 595, 600 (E.D. Va. 2010) (citing Totalplan Corp. Am. v. Colborne, 14 F.3d 824, 832 (2d Cir. 1994); and then citing Stud v. Trans Intern. Airlines, 727 F.2d 880, 881 (9th Cir. 1984)). Thus, the court will resolve the choice-of-law issue based on its diversity jurisdiction.

including "the traditional conflicts principle that the 'nature, validity and interpretation of contracts are governed by the law of the place where made, unless the contrary appears to be the express intention of the parties.'" Crosson v. Conlee, 745 F.2d 896, 902 (4th Cir. 1984) (quoting Woodson v. Celina Mut. Ins. Co., 177 S.E.2d 610, 613 (Va. 1970)).

"Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007) (citing Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999)). Such an unusual circumstance includes when a "foreign law not only differs from Virginia law but is contrary to compelling public policy of the Commonwealth; in that case, Virginia courts will not lend their aid to enforce the obligation under foreign law." Hengle v. Treppa, 19 F.4th 324, 349 (4th Cir. 2021) (citing Willard v. Aetna Cas. & Sur. Co., 193 S.E.2d 776, 778 (1973) ("Comity does not require the application of another state's substantive law if it is contrary to the public policy of the forum state"); and then citing Tate v. Hain, 25 S.E.2d 321, 324 (1943) (recognizing that the parties' choice of law is controlling "unless it be so much in conflict with the public policy of Virginia that it would not be given recognition in its courts")).

The parties agree that Virginia law controls with respect to Counts III, IV, and VI of the Complaint because these statutory and common law claims arose out of Tactical's employment of Youssef in Virginia. However, the parties dispute which state law governs the contract claims in Counts I and II. Tactical argues that Florida law governs under the choice-of-law provision in the written non-compete agreement. Compl. (ECF No. 1, ¶¶ 44-45); see also Ex. A (ECF No. 1-1, at 3). Youssef and the Olson Defendants argue that instead, Virginia law applies because analyzing the agreements under Florida law would permit enforcement of provisions that would violate

Virginia public policy.  Youssef's Mem. (ECF No. 31, at 7-9); Olson Defs.' Mem. (ECF No. 29, at 10-12).

In Virginia, non-compete clauses are disfavored restraints on trade, and are only upheld in limited circumstances.  See Simmons v. Miller, 544 S.E.2d 666, 678 (2001).  Significantly in this case, courts in Virginia have no authority to "'blue pencil' or otherwise rewrite the contract" to eliminate overbroad portions of the agreement in order to preserve its enforceability.  Update, Inc. v. Samilow, 311 F. Supp. 3d 784 (E.D. Va. 2018) (quoting Pais v. Automation Products, No. 25273-RF, 1995 WL 17049090, at *7 (Va. Cir. Ct. Apr. 17, 1995)).  By contrast, Florida law expressly permits courts to "blue pencil" or modify a restrictive covenant when it is "overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests."  Fla. Stat. § 542.335(1)(c) (West 1996).  The laws of Florida and Virginia are thus entirely at odds on this subject, and certain covenants—clearly enforceable under Florida law—would likely fail under Virginia law.[5]

Tactical argues that under Broadway & Seymour, Inc. v. Wyatt, Virginia law on blue penciling does not serve as grounds to avoid enforcing the Florida forum the parties selected.  See No. 91-2345, 1991 WL 179084 (4th Cir. Sept. 13, 1991).  I disagree.  First, despite Tactical's claim that Broadway & Seymour is binding Fourth Circuit precedent, the case, decided in 1991, is unpublished and citation to it is disfavored by Local Rule.  4th Cir. R. 32.1 (citation of unpublished opinions issued before 2007 is disfavored).  Second, Broadway & Seymour is distinguishable.  In Broadway & Seymour, the Fourth Circuit considered whether a choice-of-law provision selecting Florida law was contrary to North Carolina public policy, a state that also rejects blue penciling.

---

[5] Tactical concedes that "The application of Florida law is important because . . . Florida law is more favorable for the enforcement of restrictive covenants and, where necessary, requires courts to enforce them even if they are overbroad as drafted."  Pl.'s First Opp'n (ECF No. 36, at 4).

Id. at *5-*6.  In ruling that Florida law applied, the Fourth Circuit made clear that "the concept of blue penciling does not come into play unless we first conclude that the agreement would not be enforced as written under North Carolina law.  If the agreement would be enforceable under North Carolina law as written, there would be no need to blue pencil, and the difference in blue pencil philosophies would be irrelevant."  Id. at *5.  The Fourth Circuit held that applying Florida law did not violate North Carolina public policy in that case because the covenants were already enforceable in North Carolina without any blue penciling.  Id. at *6.  Here, as Tactical admits, some of the restrictive covenants can only be saved by blue penciling, directly implicating the conflicting public policy interests.  See infra Section III.F.  Because applying Florida law to this agreement would violate Virginia public policy and result in enforcing restrictions unenforceable in the Commonwealth, I will apply Virginia law to analyze Counts I and II.

**B.     The Contract Claims in Counts I and II.**

> **1.     The fact that the contract attached to the Complaint was not signed by Tactical does not require dismissal.**

Youssef first argues that Counts I and II should be dismissed because Tactical did not attach a complete copy signed by both parties.  Youssef's Mem. (ECF No. 31, at 5).  But considering the Complaint in the light most favorable to Tactical as the non-moving party, the company has properly pled the existence of the agreements at issue.  Providing an agreement signed by only one party nonetheless meets the threshold pleading requirements at the motion to dismiss stage.  Cf. Remacle v. Repperio, Inc., No. 1:17-cv-434, 2017 U.S. Dist. LEXIS 228019, at *25 (E.D. Va. Aug. 25, 2017) (citing T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC, 385 F.3d 836 (4th Cir. 2004) ("Although the Employment Agreement included as part of Plaintiff's complaint does not include a signature by [the employer], the Fourth Circuit . . . makes clear that such evidence is not necessary to endure a Rule 12(b)(6) motion.").  Defendants cite to Persinger & Co.

v. Larrowe, arguing that restrictive covenants in employment contracts in Virginia "are never implied," and that the party "seeking enforcement must demonstrate that all parties mutually and fully agreed to all of the terms at issue." Youssef's Mem. (ECF No. 31, at 6) (citing 477 S.E.2d 506 (Va. 1996)). However, Persinger did not concern a demurrer or a motion to dismiss, but rather, a trial court's judgment. See 477 S.E.2d at 509. And Tactical adequately alleged the existence of a contract, attaching multiple signature pages. Accepting all allegations in the Complaint as true and viewing them in the light most favorable to Tactical, the contracts alleged in the Complaint are not void for want of a signature.

### 2. Despite overbroad language, Counts I and II plausibly allege claims for breach of contract.

Defendants argue that the contract counts should be dismissed because the provisions in the non-compete agreement are "overly-broad, unduly vague, improperly ambiguous, or some combination of these flaws." Youssef's Mem. (ECF No. 31, at 9-11); Olson Defs.' Mem. (ECF No. 29, at 3-7).[6] Plaintiff responds that under Eagle Paper International, Inc v. Continental Paper Grading Co., and Assurance Data, Inc. v. Malyevac, discovery is necessary to evaluate the reasonableness of the restrictive covenants, so dismissing the claims would be premature. Pl.'s First Opp'n (ECF No. 36, at 5, 10). Despite the agreement's broad language, I agree with Plaintiff that dismissing both contract counts now would be premature.

The Supreme Court of Virginia in Assurance Data, Inc. v. Malyevac, 747 S.E.2d 804 (Va. 2013), held that a demurrer, the state court equivalent of a Rule 12(b)(6) motion, "cannot be used

---

[6] The Olson Defendants also challenge the adequacy of Tactical's claims in Counts I and II, although the Complaint does not allege Counts I and II against the Olson Defendants. Olson Defs.' Mem. (ECF No. 29, at 12-15). Tactical's Complaint makes clear that Counts I and II apply only to Youssef. Compl. (ECF No. 1, at 8, 10). To the extent the Olson Defendants move to dismiss Counts I and II as alleged against them, the issue is moot. Youssef adopts and incorporates the arguments that the Olson Defendants advance in their brief, so this court will consider those arguments in determining Counts I and II's sufficiency with respect to Youssef. See Youssef's Mem. (ECF No. 31, at 5 n.1).

to decide on the merits whether a restraint on competition is enforceable." Id. at 805; see id. at 808-09 ("[A] demurrer has one purpose – to determine whether a complaint states a cause of action upon which the requested relief may be granted." (citations omitted)).   The same can be said for a Rule 12(b)(6) motion.   When a party challenges a restrictive covenant as overbroad and unenforceable, "the party seeking to enforce the covenant bears the burden of showing the restriction is justified." Eagle Paper Int'l, Inc. v. Cont'l Paper Grading Co., No. 2:23-cv-512, 2024 WL 1328317, at *3 (E.D. Va. Mar. 27, 2024) (citing Lumber Liquidators, Inc. v. Cabinets To Go, LLC, 415 F. Supp. 3d 703, 715 (E.D. Va. 2019)).   The Supreme Court in Assurance reasoned that the lower court erred in resolving the enforceability issue at the demurrer stage "because the plaintiff had no opportunity to 'present evidence to demonstrate that the restraints' were justified." Id. at *3 (quoting Assurance Data, Inc., 747 S.E.2d at 809).   "Because 'restraints on competition are neither enforceable nor unenforceable in a factual vacuum,' the restraint's proponent 'may prove a seemingly overbroad restraint to be reasonable under the particular circumstances of the case.'" Id. (quoting Assurance Data, Inc., 747 S.E.2d at 808).

Defendants attempt to distinguish Assurance by arguing that the standards for a demurrer and a Rule 12(b)(6) motion differ. Olson Defs.' Mem. (ECF No. 29, at 4 n.1); Olson Defs.' Reply (ECF No. 39, at 5).   But "[b]oth a demurrer under state rules of procedure and a motion to dismiss under Rule 12(b)(6) test the sufficiency of a pleading for failure to state a cause of action or fact or facts upon which relief can be granted." S. Tr. Mortg., LLC v. Carson, No. 2:22-cv-245, 2023 WL 3922623, at *5 (E.D. Va. May 18, 2023).   Further, courts in the Eastern District of Virginia have consistently relied on Assurance in denying motions to dismiss non-compete contract claims for overbreadth. See, e.g., Empower AI, Inc. v. Dillahay, No. 1:24-cv-83, 2024 WL 4351437 (E.D. Va. Sept. 30, 2024); BDO USA, P.C. v. Ankura Consulting Grp., LLC, No. 3:24-cv-179, 2024

WL 3874221 (E.D. Va. Aug. 19, 2024); Neustar, Inc. v. Rapp, No. 1:18-cv-478, 2019 WL 11232181 (E.D. Va. Mar. 25, 2019).

Defendants are nonetheless correct to observe that Rule 12(b)(6) still requires a pleading with sufficient facts to make the alleged breach plausible on its face. And a contract provision restricting competition is enforceable only if "it is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc., 618 S.E.2d 340, 342 (Va. 2005). Thus, even with the Virginia Supreme Court's mandate in Assurance, Tactical must plausibly allege facts to demonstrate the broad prohibitions in its non-compete are plausibly necessary to protect a legitimate business interest. See Reading & Language Learning Ctr. v. Sturgill, 94 Va. Cir. 94, 105-06 (2016) (distinguishing Assurance because Plaintiff insufficiently alleged proposed business interest supporting the restrictive covenant). Here, the facts alleged in support of the non-compete—as distinguished from the non-solicitation provision—are likely insufficient. See Compl. (ECF No. 1, ¶¶ 46-49) (alleging that the purpose of the covenants is to "protect legitimate business interests" and that Youssef "breached the Non-Compete Agreement by "engaging in business with Tactical's competitors"). But because the contract claims are alleged collectively—and the breach of other provisions in the agreement are plausibly alleged—the court will not dismiss Counts I and II, both of which allege breach of contract claims based on Youssef's post-termination obligations. As Assurance counsels, Defendants' argument is premature. The parties may proceed to discovery and Youssef may renew her arguments regarding overbreadth and vagueness after a factual record has been developed.

### 3.    Tactical has plausibly alleged breach of the confidentiality agreements in Count II.

Defendants also argue that Tactical failed to state a claim for breach of the confidentiality and non-disclosure agreement and for breach of the business confidentiality agreement.[7]  Olson Defs.' Mem. (ECF No. 29, at 12-15).  Defendants claim that Tactical fails to allege which provision in the confidentiality agreement Youssef violated and argue that Youssef did not breach the agreements by sending the information to her personal email.  Id. at 13; Olson Defs.' Reply (ECF No. 39, at 8) (arguing that the contents of the confidentiality agreements do not prohibit emailing information to oneself).   Similarly, Defendants claim that Tactical failed to adequately plead breach of the business confidentiality agreement because its claims were conclusory and lack any allegations that Youssef disclosed any information.  Id. at 14.  Youssef alone alleges that these agreements are also unenforceable because both are overbroad.[8]  Youssef's Mem. (ECF No. 31, at 10-11).

Under Virginia law, to survive a motion to dismiss for failure to state a breach of contract claim, the complaint must state sufficient facts showing: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendants' violation or breach of that obligation; and (3) injury or

---

[7] Youssef likewise adopts the arguments put forth by the Olson Defendants with respect to the alleged breaches of the confidentiality agreement and the business confidentiality agreement.  See Youssef's Mem. (ECF No. 31, at 5 n.1).

[8] Youssef alone challenges the enforceability of the confidentiality and non-disclosure agreement," Ex. B (ECF No. 1-2), and the business confidentiality agreement, Ex. C (ECF No. 1-3).  Specifically, Youssef takes issue with the "but not limited to" language in the first line of the confidentiality agreement.  Ex. B (ECF No. 1-2, at 2).  Further, Youssef argues that the Business Confidentiality Agreement "creates an unresolvable ambiguity," because it is unclear if Tactical intended to replace the prior agreement or merely supplement it.  Youssef's Mem. (ECF No. 31, at 10-11).  To the extent Youssef claims these agreements are unenforceable, dismissing any portion of these agreements at the Rule 12(b)(6) stage is also premature. Assurance Data, Inc., 747 S.E.2d at 805; see supra Section III.B.2.

damage to the plaintiff caused by the breach of the obligation." Filak v. George, 594 S.E.2d 610, 614 (Va. 2004). A legally enforceable obligation requires "acceptance of an offer . . . as well as valuable consideration." Montagna v. Holiday Inns, Inc., 269 S.E.2d 838 (Va. 1980) (citations omitted). For a contract to be enforceable, "there must be mutual assent of the contracting parties in terms reasonably certain under the circumstances." Allen v. Aetna Cas. & Sur. Co., 281 S.E.2d 818, 820 (Va. 1981).

While the Complaint lacks precision, "it is well-established that '[a] plaintiff need not plead all the specific details underlying an alleged breach of contract to state a claim." Empower AI, Inc., 2024 WL 4351437, at *7 (quoting Castillo-Gomez v. Convenience Car Care Ctr., Inc., No. 1:14-cv-651, 2014 WL 3544839, at *2 (E.D. Va. July 17, 2014)). Tactical alleged that it entered into the confidentiality agreements with Youssef, which prevented her from using proprietary "information in any way detrimental to" Tactical, Compl. (ECF No. 1, ¶¶ 22(a)) and from disclosing "protected health information or other information that is considered proprietary, sensitive, or confidential unless there is a need to know basis," id. at ¶ 22(b). The business confidentiality agreement required her to "hold and maintain all the company's 'business information . . . in strict confidence.'" Id. ¶ 24. Tactical further alleges "that Youssef emailed patient records, proprietary language, and the names of Tactical customers to her personal email, and that there "was no legitimate or authorized reason for Youssef to email these materials to her personal email address." Compl. (ECF No. 1, ¶¶ 27-30); see also id. ¶ 59. Finally, Tactical plausibly alleges the damage it suffered because of Youssef's breaches of confidentiality. Id. ¶¶ 40, 42. In considering both agreements' broad definition of confidential information in the agreements paired with the allegations in the Complaint, the court finds it reasonable to infer that Youssef emailed herself confidential information in violation of the confidentiality agreements.

See Empower AI, Inc., 2024 WL 4351437, at *7 (refusing to dismiss breach of contract claim and recognizing broad definition of confidential information).

Thus, Defendants' Motions to Dismiss Counts I and II for breach of the confidentiality provisions are DENIED.

**C.    Plaintiff Has Failed to Plausibly Allege Equitable Indemnification Against All Defendants.**

To state a claim for equitable indemnification, one must allege that "a party without personal fault [has been held] liable for damages caused by the negligence of another." Carr v. Home Ins. Co., 463 S.E.2d 457 (Va. 1995). Tactical alleges that it took preemptive steps to "address its exposure to legal liability arising from Youssef's disclosure of statutorily protected patient health information," which gives rise to an equitable indemnification claim for the attorneys' fees spent assessing the potential exposure. Compl. (ECF No. 1, ¶¶ 61-65). Defendants argue that Tactical fails to allege negligence or facts amounting to negligence—a prerequisite for equitable indemnification. Olson Defs.' Mem. (ECF No. 29, at 15); Youssef's Mem. (ECF No. 31, at 14).

Tactical fails to allege any initial finding of Youssef or the Olson Defendants' negligence that caused Tactical to incur any liability. Further, even if Tactical is correct in arguing that "[t]he equitable indemnity duty does not need to arise from negligence," Tactical still fails to plead equitable indemnification. Pl.'s Second Opp'n (ECF No. 37, at 13) (citing Int'l Fid. Ins. Co. v. W. Va. Water Auth., No. 7:11-cv-441, 2012 U.S. Dist. LEXIS 155052, at *13 (W.D. Va. Oct. 30, 2012)). An innocent party acquires a right to equitable indemnification only after the party becomes legally liable for damages resulting from another's breach of a duty. In other words, the innocent party must first pay a third party for the liability arising from another's actions. Here, Tactical has only alleged it paid its own attorneys' fees to address possible violations committed

16

by Youssef and the Olson Defendants.  See Collier v. Land & Sea Restaurant Co., LLC, 972 F.

Supp. 2d 870, 875 n.2 (W.D. Va. 2013) (quoting Hartford Acc. & Indem. Co. v. Williams, 291 F.

Supp. 103, 106 (W.D. Va. 1968) ("[W]hile contractual indemnity may include payment of

attorneys' fees and costs . . . implied or common law indemnification generally does not allow

recovery of attorneys' fees.")); Appalachian Power Co. v. Saunders, 349 S.E.2d 101, 106 (Va.

1986) (quoting S. Ry. Co. v. Arlen Realty, 257 S.E.2d 841, 844 (Va. 1979) ("[W]here, as here, the

right of the indemnitee is based upon an express contract, and no provision of the contract provides

otherwise, . . . the indemnitee may recover reasonable attorney's fees and expenses of litigation

spent in defense of the claim indemnified against.")).  As such, Defendants' Motions to Dismiss

Count III are GRANTED.

**D.    Plaintiff Has Plausibly Alleged Tortious Interference with a Business Expectancy Against All Defendants.**

In order to state a claim for tortious interference under Virginia law, Tactical must plead

and prove four elements: "(1), the existence of a valid contractual relationship or business

expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3)

intentional interference inducing or causing a breach or termination of the relationship or

expectancy; and (4) resultant damage to the party whose relationship or expectancy has been

disrupted."  Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985); see also Com. Funding Corp. v.

Worldwide Sec. Servs. Corp., 249 F.3d 204, 213 (4th Cir. 2001).  The interferor's knowledge of

the relationship and its intent to disturb it are necessary elements.  Durrette Bradshaw, P.C. v.

MRC Consulting, L.C., 670 S.E.2d 704, 707 (Va. 2009).  But the intent to interfere may be

established in cases where the defendant "does not act for the purpose of interfering with the

contract, or desire it but knows that the interference is certain or substantially certain to occur as a

result of his action."  Id. at 707 (citing comment j to § 766 Restatement (Second) of Torts).

17

If the contract or expectancy allegedly interfered with is terminable at will, Virginia law imposes the additional requirement that the interference be accomplished by improper methods. Duggin v. Adams, 360 S.E.2d 832, 836 (Va. 1987).  Improper methods include those that are illegal or independently tortious, such as bribery or fraud, but also conduct which "violate[s] an established standard of a trade or profession, or involve[s] unethical conduct[][,] [s]harp dealing, overreaching or unfair competition . . . . " Dunn, MacCormack & McPherson v. Connolly, 708 S.E.2d 867, 870 (Va. 2011).  Breach of a non-compete clause alone is not an improper method or means, but "misuse of inside or confidential information [or a] breach of a fiduciary relationship . . . " qualifies as improper means.  Preferred Sys. Solutions, Inc. v. GP Consulting, LLC, 732 S.E.2d 676, 688 (Va. 2012) (citing Duggin, 360 S.E.2d at 836-37).

Youssef and the Olson Defendants argue that Tactical has not properly alleged any of the elements for tortious interference with a business expectancy, claiming that the complaint lacked specifics and recited conclusory allegations.  See Olson Defs.' Mem. (ECF No. 29, at 16-17); Youssef's Mem. (ECF No. 31, at 14-16).  I disagree.

Tactical adequately pled the existence and knowledge of a business expectancy.  In Count IV, Tactical incorporates the allegations establishing the written employment agreements and Youssef's alleged business diversions performed while employed for Tactical.  Compl. (ECF No. 1, ¶¶ 31-33, Exs. A-C).  Tactical identifies several third parties in the Complaint that regularly conducted business with Tactical, alleging that Youssef knew about Tactical's regular course of business with these entities because she handled those sales as part of her work.  See id. ¶¶ 68-69 (alleging that Tactical had "longstanding relationships" with these customers and that "Youssef knew about these business expectancies" because of her role at Tactical).  Specifically, Tactical alleges that "Youssef corresponded by email with a healthcare provider that regularly referred

business to Tactical, Koa Thomas[;] . . . [a]lso as part of her work for Tactical, Youssef corresponded by email with another healthcare provider that regularly referred business to Tactical, Navy Medical Center Portsmouth, Family Medical Clinic . . . [;] [and] [i]n another instance, healthcare providers decided to purchase 57 products from Tactical for Navy SEALs based in Mississippi in or around June 2023." Id.  Further, Tactical claims that the Olson Defendants knew about the business expectancies because "Youssef disclosed . . . the names of Tactical's existing and prospective customers" to them. Id. ¶ 70.

Tactical has also properly alleged intentional interference with the business expectancy and the resulting damage.  A plaintiff sufficiently pleads interference when it alleges that the defendant's conduct caused the plaintiff's loss of business.  See Chaves, 335 S.E.2d at 102. Specifically, Tactical alleges:

> On April 14, 2021, Youssef sent an email with Thomas, with a copy to an employee of Absolute DME, LLC, a competitor, and to Olson, an employee of Sabot, a competitor.  The apparent purpose of that email was to enable these other companies to compete for Thomas's business at the expense of Tactical.  And Tactical ultimately lost the business it received from Thomas.
>
> &#42;&#42;&#42;
>
> And on April 14, 2021, Youssef forwarded an email with a Portsmouth Clinic nurse to Olson.  Again, the apparent purpose of that email was to enable Sabot to compete for Portsmouth Clinic's business at the expense of Tactical.
>
> &#42;&#42;&#42;
>
> Youssef diverted [the 57 Navy SEALs orders] to Advent, costing Tactical over $100,000 in revenue.  Tactical learned about the diversion when the healthcare providers sent Tactical paperwork related to the sale and the documents reflected that Advent fulfilled the orders.

Id. ¶¶ 31-33. Tactical also alleges that the Olson Defendants "hired Youssef to deliberately . . . divert Tactical's business to them," and that Tactical has suffered damages because of the diverted business. Id. ¶¶ 40, 42, 71-72.  These allegations raise a right to relief above a speculative level.

19

Finally, Tactical has properly alleged that Youssef interfered using improper means. Disclosing confidential information or violating a fiduciary duty both qualify as improper means, which Tactical has alleged here. See id. ¶¶ 15-36; Preferred Sys. Solutions, Inc., 723 S.E.2d at 688. Taking all of these allegations as true and in the light most favorable to the Plaintiff—as required by Rule 12(b)(6)—Tactical has stated a claim for tortious interference with a business expectancy. Thus, Defendants' Motions to Dismiss Count IV are DENIED.

**E.     Plaintiff Has Plausibly Alleged Claims under the Defend Trade Secrets Act and Virginia Uniform Trade Secrets Act.**

Tactical alleges violations of both the Defend Trade Secrets Act ("DTSA") and the Virginia Uniform Trade Secrets Act ("VUTSA") in Counts V and VI, claiming that Defendants misappropriated its customer list and proprietary language used in documents submitted to healthcare providers to qualify for payment through the military health system. Compl. (ECF No. 1, ¶¶ 73-89). The VUTSA and DTSA standards are nearly identical. Variable Annuity Life Ins. Co. v. Coreth, 535 F. Supp. 3d 488, 514 (E.D. Va. 2021). To properly allege a violation of the VUTSA, Plaintiff must allege the (1) existence of a trade secret, and (2) that the defendant misappropriated the trade secret. Collelo v. Geographic Servs., Inc., 727 S.E.2d 55, 60 (Va. 2012) (citing Va. Code Ann. § 59.1-336). In order to plead a violation of the DTSA, Plaintiff must allege that (1) it owns a trade secret, (2) that the trade secret was misappropriated, and (3) that the trade secret implicates interstate or foreign commerce.[9] 18 U.S.C. § 1836(b)(1).

---

[9] Only Defendant Youssef challenges that adequacy of Tactical's pleadings with respect to the interstate commerce prong. See Youssef's Mem. (ECF No. 31, at 16); Youssef's Reply (ECF No. 38, at 14-15). Because Tactical alleges that the trade secrets allowed it, a Florida company, to do business in Virginia and elsewhere across the United States, Compl. (ECF No. 1, ¶¶ 5, 13, 33, 79), Tactical has properly alleged the requisite interstate nexus. See, e.g., TFOR LLC v. Virustream, Inc., No. 2:16-cv-602, 2017 U.S. Dist. LEXIS 227990, at *34 (E.D. Va. June 22, 2017).

The DTSA defines a trade secret as: "[A]ll forms and types of financial, business, scientific, technical, economic, or engineering information," if (1) "the owner thereof has taken reasonable measures to keep such information secret," and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by" competitors. 18 U.S.C. § 1839(3). The VUTSA defines a trade secret substantially the same way. Va. Code Ann. 59.1-336; see also Decision Insights, Inc. v. Sentia Group, Inc., 416 F. App'x 324, 331 (4th Cir. 2011) (listing as elements (1) independent economic value, (2) not known or readily ascertainable by proper means, and (3) subject to reasonable efforts to maintain secrecy).

Determining whether a trade secret exists is generally a question of fact to be determined from the "greater weight of the evidence." Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs. LLC, No. 7:21-cv-577, 2024 U.S. Dist. LEXIS 23266, at *24 (W.D. Va. Feb. 9, 2024) (quoting Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale, Ltd., 859 F. Supp. 2d 771, 778 (E.D. Va. 2012)). "The case law is clear that just about anything can constitute a trade secret under the right set of facts," if it meets the above elements. MicroStrategy, Inc. v. Business Objects, S.A., 331 F. Supp. 2d 396, 416 (E.D. Va. 2004). Of course, a company must make "reasonable efforts under the circumstances to keep its information secret." Pegasystems Inc. v. Appian Corp., 904 S.E.2d 247, 264 (Va. Ct. App. 2024) (citing Va. Code Ann. § 59.1-336). But secrecy need not be absolute: "the owner of the trade secret may, without losing protection, disclose it to a licensee, an employee, or a stranger, if the disclosure is made in confidence, express or implied." Id. at 263 (quoting Dionne v. Se. Foam Converting & Packaging, Inc., 397 S.E.2d 110, 113 (Va. 1990)).

Both Youssef and the Olson Defendants claim that Tactical has not alleged the existence of a trade secret, arguing that the alleged trade secrets derive no independent economic value.

21

Olson Defs.' Mem. (ECF No. 29, at 19-20); Youssef's Mem. (ECF No. 31, at 16-17). Defendants also allege that Tactical has failed to keep such information secret. Id.

The court finds that Tactical has sufficiently described the trade secrets at issue to state a claim under both the DTSA and the VUTSA. Tactical's customer list qualifies as a trade secret. See Hilton Worldwide, Inc. v. Global Advert., Inc., No. 1:15-cv-1001, 2016 WL 8223436, at *20 (E.D. Va. Apr. 8, 2016) (holding that a customer list constitutes a trade secret under the VUTSA and recognizing that numerous courts have found customer lists to be trade secrets). The list gives rise to independent economic value, given that Tactical has alleged that "Tactical had a demonstrated record of growing business" from the customers on the list, and that Tactical "had detailed projections of the business it expected from those customers in the future." Compl. (ECF No. 1, ¶ 72). Similarly, the "proprietary language" may have independent economic value because, as Tactical alleges, the language is used "to qualify [Tactical] for payment from the military health system." Id. ¶ 28. Tactical has developed the customer list and the language through its own efforts, which "could be extremely valuable in the hands of a competitor." ClearOne Advantage, LLC v. Kersen, 710 F. Supp. 3d 425, 436 (D. Md. 2024) (citing Albert S. Smyth Co. v. Motes, No. CCB-17-677, 2018 WL 3635024, at *4 (D. Md. July 31, 2018) (holding that confidential customer records and lists constitute trade secrets because they would be economically valuable to a competitor)). Further, Tactical clearly states that its customer list and language are proprietary and not generally known or easily ascertainable to others. See Compl. (ECF No. 1, ¶¶ 28, 76-81) (describing profits derived from the customer list, how the language allows Tactical to qualify for payment from military health system, and efforts to password protect information and require those with access to sign confidentiality agreements); see also ClearOne Advantage, LLC, 710 F. Supp. 3d at 435 (holding under the DTSA that a customer database constituted a trade secret when such

a database was password protected). Thus, the customer list and the proprietary language may qualify as trade secrets if Tactical can prove its factual claims regarding their proprietary nature.[10]

The definitions of misappropriation under federal and Virginia law also mirror each other. A person misappropriates trade secrets under the DTSA when they (1) acquire a trade secret that they know or have reason to know was acquired by improper means, or (2) disclose or use a trade secret use after acquiring it through improper means, including when it has been acquired under "circumstances giving rise to a duty to maintain the secrecy of the trade secret." 18 U.S.C. § 1839(5). Similarly, "misappropriation" is defined under the VUTSA to include the use of "improper means" to acquire knowledge of the trade secret, which includes "theft," "misrepresentation," and "espionage through electronic or other means." Va. Code Ann. § 59.1-336. Improper means also includes "breach or inducement of a breach of a duty to maintain secrecy." § 1839(6). Plaintiff can show misappropriation "simply by demonstrating that the defendant acquired [the] trade secret by improper means, even if the plaintiff cannot show use of that trade secret." Systems 4, Inc. v. Landis & Gyr, Inc., 8 F. App'x 196, 200 (4th Cir. 2001).

Defendants argue that Tactical fails to allege misappropriation, stating that Tactical did not allege that either Youssef or the Olson Defendants acquired, disclosed, or used any trade secrets. Olson Defs.' Mem. (ECF No. 29, at 24-28). Defendants also assert that to the extent that Tactical alleges acquisition, disclosure, or use, such allegations are conclusory and lack factual support. Id.

Tactical has pled sufficient facts to demonstrate that misappropriation occurred. Tactical alleged that Youssef sent the customer list and proprietary language to her personal email, claiming

---

[10] At the hearing on the motion, Defendants' counsel asserted that the purportedly "proprietary language" was shared with numerous third parties and available on Tactical's website. As a result, counsel argued, Tactical's claims of trade secret protection are unfounded. But at this stage of the proceedings, the court looks only to the facts alleged, in the light most favorable to Tactical. See Zak, 780 F.3d at 606-07.

that "[t]he only reason for Youssef to send these materials to her personal email address is so that she or a competitor could use them for her or their own benefit in a way that Tactical could not easily detect." Compl. (ECF No. 1, ¶ 30); see also Brainware, Inc. v. Mahan, 808 F. Supp. 2d 820, 829-30 (E.D. Va. 2011) (denying motion to dismiss because plaintiff alleged defendant forwarded confidential information to his personal email and revealed such information to a competitor). Tactical then alleged that Youssef and the Olson Defendants began to use these alleged trade secrets to further their own business at the expense of Tactical. Id. ¶¶ 25-36.

These facts amount to disclosure through improper means at the motion to dismiss stage. Although Defendants argue that Tactical's allegations are conclusory and only list vague references to "proprietary language" and its customers, the Federal Rules only require a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), enough to support a "reasonable inference that the defendant is liable," Iqbal, 556 U.S. at 678. The information alleged in the complaint—a list of clients and specific proprietary language used to secure payment through the military healthcare system—is the type of information which may not be freely shared with competitors. Tactical has alleged that it has taken reasonable measures to protect such information, and that Defendants used this information after acquiring it by improper means. Thus, Defendants' Motions to Dismiss Counts V and VI are DENIED.

**F.      Tactical's Motion for a Preliminary Injunction is Denied.**

Although Tactical's contractual claims mostly survive scrutiny at the Motion to Dismiss stage, the company's request for preliminary injunctive relief is not subject to the same deferential standard. "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, 555 U.S. 7, 24 (2008); see Mountain Valley Pipeline, LLC v. W. Pocahontas Prop. LP, 918 F.3d 353, 366 (4th Cir. 2019) (applying the Winter factors). In other

24

words, "such relief is regarded as . . . a 'drastic' use of the court's injunctive power and is never granted lightly, but is instead to be used only in limited circumstances which clearly demand it." Downing v. Lee, No. 1:16-cv-1511, 2017 WL 11489270, at *2 (E.D. Va. Feb. 13, 2017) (quoting Tiffany v. Forbes Custom Boats, Inc., 959 F.2d 232 (4th Cir. 1992)). A party seeking a preliminary injunction "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in [their] favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20. The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). Courts must consider each of the preliminary injunction factors separately. See Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017).

According to Federal Rule of Civil Procedure 52(a)(2), "[i]n granting or refusing an interlocutory injunction, the court must . . . state the findings and conclusions [of law] that support its action [separately]." Fed. R. Civ. P. 52(a)(2). If the Court grants a preliminary injunction, it must analyze each Winter factor, "because a preliminary injunction can only be granted if every factor is met." Frazier v. Prince George's Cnty., Maryland, 86 F.4th 537, 544 (4th Cir. 2023) (first citing Winter, 555 U.S. at 20; and then citing Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 423 (4th Cir. 1999)). However, if the Court denies a preliminary injunction, the Court "may satisfy Rule 52(a)(2) by stating the facts and legal conclusions about a single factor," as denial "only takes the rejection of a single factor." Id.

### 1. Likelihood of success.

Tactical argues that it is likely to succeed on the merits because it can demonstrate breach of the non-compete agreement and confidentiality agreements. Pl.'s Mem. Supp. Mot. Prelim. Inj.

("Pl.'s Prelim. Inj. Mem.") (ECF No 17, at 8-9). Tactical also argues it can show likelihood of success on its equitable indemnification claim, tortious interference claim, and trade secrets claims. Id. at 10-13. Youssef argues in response that under Local Rule 7(A), Tactical failed to provide any grounds for relief because of its failure to incorporate by reference its memorandum in support of its motion for preliminary injunction. Def. Youssef's Br. Opp'n Pl.'s Mot. Prelim. Inj. ("Youssef's Prelim. Inj. Mem.") (ECF No. 32, at 4-5).[11] Youssef then reiterates the same arguments set forth in her motion to dismiss, primarily arguing that Tactical cannot show a likelihood of success because the non-compete agreement is overbroad and unenforceable. Id. at 11-14. Defendants also claim that because the court considered the same evidence now presented in denying Tactical's motion for a temporary restraining order, Tactical cannot succeed on its motion for a preliminary injunction. Mem. Holly Olson, Sabot Medical LLC, and Advent Medical LLC Opp'n Pl.'s Mot. Prelim. Inj. ("Olson Defs.' Prelim. Inj. Mem.") (ECF No. 33, at 4).

But that filing was presented ex parte. And in denying Tactical's motion for a Temporary Restraining Order, Judge Walker held that Tactical had failed to establish "proof that 'immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition.'" (ECF No. 15, at 3) (quoting Fed. R. Civ. P. 65(b)(1)(A)). Applying Winter now, with the benefit of adversary proceedings, the court finds that Tactical has failed to demonstrate a

---

[11] The court refuses to deny Tactical's motion for a preliminary injunction solely because of a probable inadvertent mistake by opposing counsel. Further, while the cases Youssef cites all involve courts denying relief to parties under the rule, each case involves some sort of bad faith from the party or serious deficiencies in a motion without an accompanying memorandum. See, e.g., Kenny v. Bank Am., N.A., No. 4:11-cv-120, 2011 WL 13234444, at *2-*3 (E.D. Va. 2011) (failing to provide any proposed amendment in a motion to amend the complaint); United States v. Nguyen, 313 F. Supp. 2d 579, n.4 (E.D. Va. 2004) (recognizing that barebones motion did not give government notice of grounds for suppression). Here, Tactical brings its motion based on Fed. R. Civ. P. 65(a), which is sufficient. See Small v. Tate, 2019 WL 446594, at *2 n.2 (E.D. Va. Jan. 29, 2019) (refusing to dismiss a claim because the motion referred to Rule 12(b)(6) and the local rule does not require "a detailed summary of every argument").

likelihood of success.  The court has considered each factor, and although Tactical is not required to "establish a certainty of success," Tactical has failed to "make a clear showing that [it] is likely to succeed at trial" in enforcing all but the non-solicitation clause in the non-compete agreement. Di Biase, 872 F.3d at 230.

A provision restricting competition is enforceable if "it is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." Omniplex World Servs. Corp., 618 S.E.2d at 342. When determining whether the employer has met that burden, courts consider the "function, geographic scope, and duration" of the restriction. Home Paramount Pest Control Cos., Inc. v. Shaffer, 718 S.E.2d 762, 763 (Va. 2011) (quoting Simmons v. Miller, 544 S.E.2d 666, 678 (Va. 2001)). All three of these elements must be considered together. Id. "Because such restrictive covenants are disfavored restraints on trade, the employer bears the burden of proof and any ambiguities in the contract will be construed in favor of the employee." Omniplex World Servs. Corp., 618 S.E.2d at 342. When a former employer seeks "to prohibit its former employees from working for its competitors in any capacity, it must prove a legitimate business interest for doing so." Home Paramount Pest Control Cos., Inc., 718 S.E.2d at 765 (citing Modern Environments, Inc. v. Stinnett, 561 S.E.2d 694, 696 (Va. 2002)).

Tactical's non-compete with Youssef provides in relevant part:

Beginning on April 17, 2019, and through the Time Period mentioned in Section 3 herein, [Youssef] shall not: Provide the same or similar industry products, services, or engage in any other way a representation of any other business of a similar nature to the business of [Tactical] without written consent.

***

Directly or indirectly engage in any similar business practice of [Tactical] while being in contact with [Tactical's] current or former clients.

***

27

> Nor shall [Youssef] solicit any client of [Tactical] for the benefit of a third party
> that is engaged in a similar business to that of [Tactical].
>
> ***
>
> Engage in business activity, whether paid or non-paid, with a competitor of
> [Tactical] that provides a similar product or service.[12]

Ex. A (ECF No. 1-1, at 2). The geographic scope of the non-compete agreement also covers the

"entire United States," and the duration "ends upon 2-years from the date of leaving Tactical

Rehabilitation." Id. at 2-3. Defendants challenge each of the above provisions, claiming they are

overbroad.

With the exception of the specific non-solicitation clause quoted above, all of these

restrictions on post-separation employment are likely too vague or overbroad to support injunctive

relief. Virginia courts have repeatedly found overbroad or vague language in non-compete

agreements unenforceable. See, e.g., Home Paramount Pest Control Cos., Inc., 718 S.E.2d 762;

Omniplex World Servs. Corp., 618 S.E.2d 340; Modern Environments, Inc., 561 S.E.2d 694;

Motion Control Systems, Inc. v. East, 546 S.E.2d 424 (Va. 2001); Simmons v. Miller, 544 S.E.2d

666 (Va. 2001). In Home Paramount, the Virginia Supreme Court found language preventing a

former employee from "engag[ing] indirectly or concern[ing] himself . . . in any manner

whatsoever" in pest control business "as an owner, agent, servant, representative, or employee,

and/or as a member of a partnership and/or as an officer, director or stockholder of any corporation,

or in any manner whatsoever" unenforceable. Home Paramount Pest Control Cos., Inc., 718

S.E.2d at 764. On its face, the provision in Home Paramount prohibited the former employee from

working for a competitor or "any other business in the pest control industry in any capacity." Id.

at 765. Thus, although the Court weighed the function element of the provision "together with its

---

[12] For simplicity, this opinion refers to the non-compete clauses in numerical order. Clause three is also
referred to as the "non-solicitation clause."

geographic scope and duration elements, the clear overbreadth of the function here [could not] be saved by narrow tailoring of geographic scope and duration." Id.

Thus, under clear Virginia precedent, clauses one and four of the non-compete are all likely unenforceable, as they are similar to the clauses found unenforceable in Simmons, Motion Control, and Home Paramount. Clause one prevents Youssef from providing the "same or similar industry products" or "engag[ing] in any other way a representation of any other business of a similar nature to the business" of Tactical, and clause four prevents her from engaging in any "business activity . . . with a competitor of [Tactical] that provides a similar product or service." Ex. A (ECF No. 1, at 2). These clauses are even more vague and overbroad than the one in Home Paramount; they reach far enough to prevent Youssef from practically working any job for a company in the medical sales industry. 718 S.E.2d at 765 ("On its face, it prohibits [the former employee] from working . . . [for] any other business in the pest control industry in any capacity.").

Clause two is also likely vague and overbroad. Clause two prevents Youssef from "Directly or indirectly engag[ing] in any similar business practice of [Tactical] while being in contact with [Tactical's] current or former clients." Ex. A (ECF No. 1, at 2). Valid provisions prohibit an employee from "engaging in activities that actually or potentially compete with the employee's former employer," while invalid prohibitions go beyond the scope of the employer's business. Omniplex World Servs. Corp., 618 S.E.2d at 342; see Simmons, 544 S.E.2d at 678 (finding overbroad a covenant preventing an employer of a cigar company from "directly or indirectly" being employed by or connected "in any manner" to "any business similar to the type of business conducted by the employer"). Clause two appears to prevent Youssef from performing any conceivable "similar business practice"—a phrase that could represent any number of things, including activities beyond Tactical's sales and marketing practices.

29

However, the non-solicitation clause, clause three, is likely enforceable, because it limits the individuals Youssef cannot solicit to a discrete group of entities: Tactical's clients Youssef became familiar with while working for Tactical. See Ex. A (ECF No. 1, at 2); Advanced Marine Enters., Inc. v. PRC, Inc., 501 S.E.2d 148, 155 (Va. 1998) (upholding clause because it did not place a blanket prohibition on working for a competitor, but only from rendering services to the former employer's customers); see also Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick, 389 S.E.2d 467 (Va. 1990) (upholding provision that did not forbid employee from working in any capacity for a medical equipment company or from selling any type of equipment, but prohibited employee from working in the industry in a role that would compete with the business). Under clause three, Youssef can still work for companies in the medical device field, as long as she does not solicit Tactical's clients. Thus, clause three is likely enforceable.

The varying strength of each of these clauses raises the question of severability. As discussed above, Virginia law does not recognize blue penciling. Courts applying Virginia law refuse to modify restrictive covenants to make them enforceable. See Lasership Inc. v. Watson, No. CL-2009-1219, 2009 WL 7388870, at *9 (Va. Cir. Ct. Aug. 12, 2009). However, Virginia courts may sever unenforceable provisions allowing enforcement of the surviving provisions if the clauses impose distinct duties and the contract contains an enforceable severability clause. See GMS Industrial Supply, Inc. v. G&S Supply, LLC, 441 F. Supp. 3d 221, 228 (E.D. Va. 2020) (severing an independent enforceable clause from unenforceable clauses). "The difference between 'blue penciling' and severing is a matter of focus. The former emphasizes deleting, and in some jurisdictions adding words in a particular clause. The latter emphasizes construing independent clauses independently." Pitchford v. Oakwood Mobile Homes, Inc., 124 F. Supp. 2d 958, 966 (W.D. Va. 2000). In determining severability, if "a contract covers several subjects, some

30

of whose provisions are valid and some void, those which are valid will be upheld if they are not so interwoven with those illegal as to make divisibility impossible." Alston Studios, Inc. v. Lloyd V. Gress & Assocs., 492 F.2d 279, 285 (4th Cir. 1974).

Like the provisions in GMS Industrial Supply, Inc., the non-solicitation clause here is divisible from the other clauses in the non-compete agreement. See 441 F. Supp. 3d at 228. The non-compete also contains a valid severability clause. See Ex. A (ECF No. 1-1, at 4) ("If any provisions of this Agreement or its applications is held to be invalid, illegal or unenforceable in any respect, the validity, legality or enforceability of any other provisions and applications herein shall not in any way be affected or impaired."). Clause three imposes a distinct duty on Youssef: she could not solicit any of Tactical's clients for the benefit of another similar business. Id. Thus, it can be construed independently from the other clauses. See GMS Industrial Supply, Inc., 441 F. Supp. 3d at 228 (citing Alston Studios, Inc., 492 F.2d at 285). No blue-penciling is required because severing this clause does not limit the clause's geographic scope, duration, or scope of activity governed. See id.

### 2. Irreparable harm.

Although Tactical has demonstrated some likelihood of success in enforcing the non-solicitation provision in clause three, any harm resulting from such breach would not result in irreparable harm at this stage of the proceedings. Tactical claims an injunction is necessary to prevent the loss of customers and revenue. Pl.'s Prelim. Inj. Mem. (ECF No. 17, at 13-14). Defendants argue that Tactical merely alleges a possibility of harm, and that if Tactical is or is about to suffer irreparable harm, it would have made efforts to seek relief sooner by requesting a hearing and by mitigating its harm by hiring a replacement for Youssef. Youssef's Prelim. Inj. Mem. (ECF No. 32, at 17); Olson Defs.' Prelim. Inj. Mem. (ECF No. 33, at 5).

31

Tactical argues that <u>Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.</u> provides "blackletter law" that "the possibility of permanent loss of customers to a competitor or loss of goodwill" satisfies the irreparable injury prong. Pl.'s Prelim. Inj. Mem. (ECF No. 17, at 13) (citing 22 F.3d 546, 552 (4th Cir. 1994)). But its thirty-year old precedent is expressly contradicted by <u>Winter</u>, which stated that the "possibility" standard is too lenient, "directly reject[ing] the irreparabl[e] injury standard articulated in <u>Multi-Channel</u>. [A]fter <u>Winter</u>, the 'possibility' standard [the movant] asks the Court to apply is no longer good law." <u>JTH Tax, LLC v. Younan</u>, No. 2:22-cv-383, 2023 WL 6304865, at *5 n.7 (E.D. Va. Sept. 27. 2023); <u>see also</u> <u>Winter</u>, 555 U.S. at 22 (noting that "issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy"). Irreparable harm must be "actual or imminent," not "remote or speculative." <u>Di Biase</u>, 872 F.3d at 230 (citations omitted).

Further, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." <u>Di Biase</u>, 872 F.3d at 230. Generally, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." <u>Update, Inc.</u>, 311 F. Supp. 3d at 796 (quoting <u>Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.</u>, 22 F.3d 546, 552 (4th Cir. 1994), <u>abrogated on other grounds by Winter</u>, 555 U.S. 7). Tactical claims that loss of business cannot be measured and adequately addressed by an award of damages. <u>See Noble Supply & Logistics, LLC v. Curry</u>, 705 F. Supp. 3d 583, 594 (W.D. Va. 2023). However, the burden of demonstrating irreparable harm is higher than the plausibility standard under Rule 12(b)(6). Although Tactical plausibly alleged lost business under the motion to dismiss standard, at this stage in the litigation, serious factual disputes still exist as to whether Tactical has lost customers, whether the customers

were Tactical's to begin with, and whether the losses alleged resulted from Youssef's alleged breach of the non-solicitation clause or from some other factors. And even if its losses are proven to result from a breach of the non-solicitation provision, these losses should be readily capable of calculation. Thus, Tactical's allegations of lost business remain speculative under the preliminary injunction standard, and it has a strong possibility of receiving adequate relief in the future. Because Tactical cannot show that it will suffer irreparable harm absent a preliminary injunction, Tactical's Motion for a Preliminary Injunction is DENIED.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendants Olson, Sabot Medical LLC, and Advent Medical LLC's Motion to Dismiss, (ECF No. 28), and Defendant Youssef's Motion to Dismiss, (ECF No. 30). The court also DENIES Tactical's Motion for Preliminary Injunction, (ECF No. 16).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
November 7, 2024

33